**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 18, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

THE OHIO CASUALTY INSURANCE
COMPANY,

     Plaintiff/Counter-Defendant/Cross-
     Defendant/Appellant,

v.

UNIGARD INSURANCE COMPANY,

     Plaintiff/Intervenor/Cross-
     Claimant/Appellee,

and

WEST AMERICAN INSURANCE
COMPANY,

     Plaintiff/Counter-Defendant/Cross-
     Defendant,

v.

CLOUD NINE, a Utah corporation;
EASY SEAT, a Utah corporation;
RODNEY FORD, a New York resident,
individually; BLAINE FORD, a Utah
resident, individually; and REX
HADDOCK, a Utah resident,

     Defendants/Counter-Claimants.

No. 08-4003
(D.C. No. 1:05-CV-00088-TC)
(D. Utah)

**ORDER AND JUDGMENT**[*]

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its

Before **BRISCOE,** Chief Judge, **KELLY**[**] and **LUCERO**, Circuit Judges.

Ohio Casualty Insurance Company (Ohio Casualty), the plaintiff in this declaratory judgment action, appeals from an order of the district court granting partial summary judgment in favor of intervenor Unigard Insurance Company (Unigard) and directing Ohio Casualty and Unigard to each pay fifty percent of the costs of defending their insureds, defendants Blaine Ford, Rodney Ford, Cloud Nine, LLC (Cloud Nine) and Easy Seat, LLC (Easy Seat), in an underlying patent and trademark infringement action. Because the resolution of Ohio Casualty's appeal turned on an important and previously unsettled question of Utah law, we certified that question to the Utah Supreme Court. Having now received the Utah Supreme Court's answer, we exercise jurisdiction pursuant to 28 U.S.C. § 1291, reverse the district court's decision, and remand to the district court for entry of judgment consistent with the Utah Supreme Court's answer to our certified question.

I

*The Edizone lawsuit*

Edizone, LC (Edizone) is a Utah company engaged in product invention,

persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] Former Chief Circuit Judge Robert H. Henry was originally a member of this panel. He resigned his commission effective June 30, 2010, and has been replaced on this panel by Circuit Judge Paul J. Kelly, Jr.

2

development and licensing.  Edizone's predecessor-in-interest, a company called TekSource, LC (TekSource), developed and patented a product called GellyComb, or Intelli-Gel, that uses a patented polymer called Gelastic to create a cushion with unique properties.

Blaine Ford and Rodney Ford are Utah residents.  In April 1998, the two men, along with another individual named Rick Johnson, formed two limited liability entities under Utah law: Cloud Nine and Easy Seat.  Cloud Nine entered into a License Agreement with TekSource for Gelastic and GellyComb Seat Overlays.  Pursuant to that agreement, Cloud Nine obtained a license to certain technology rights, patent rights, trademark rights, and trade secrets owned by TekSource.

By August of 1998, a dispute had developed between TekSource and Cloud Nine regarding whether the License Agreement authorized Cloud Nine to utilize TekSource's cushioning technology for purposes of producing wheelchair cushions.  Notwithstanding this dispute, however, Cloud Nine purportedly proceeded to market wheelchair cushions utilizing TekSource's cushioning technology.  Cloud Nine also purportedly allowed Easy Seat to market similar products without paying appropriate royalties.

In October of 2000, Cloud Nine failed to pay its minimum quarterly royalty payment to Edizone.  Thereafter, Cloud Nine failed to pay the next six minimum quarterly royalty payments due under the License Agreement.  On February 8, 2002, Edizone terminated the license granted to Cloud Nine under the License Agreement, but did not terminate the License Agreement itself.  Although Edizone offered to negotiate a

new arrangement with Cloud Nine, the parties were unable to come to an agreement. Consequently, Edizone formally terminated the License Agreement on or about March 11, 2002.

In July 2002, Edizone purportedly discovered that Cloud Nine was continuing to make and sell GellyComb products. Edizone immediately demanded in writing that Cloud Nine cease its infringing use of Edizone's GellyComb products. In June 2003, Edizone discovered that other entities were continuing to sell a variety of GellyComb products made by Cloud Nine and Easy Seat. Edizone again sent written notice to Cloud Nine asking it to cease its infringing activities. In May and July of 2004, Edizone discovered that entities were continuing to sell infringing products produced by Cloud Nine and Easy Seat.

On August 26, 2004, Edizone filed suit in federal district court in Utah against Cloud Nine, Easy Seat, the Fords, and several related individuals and entities (the Edizone suit). Edizone's complaint asserted claims for patent infringement, breach of contract, constructive fraud, fraudulent non-disclosure, trademark infringement, common law trade name infringement and unfair competition, deceptive trade practices, misrepresentation and false designation of origin, and conspiracy.

*Cloud Nine/Easy Seat's insurance coverage*

From approximately June of 1998 to June of 2001, Cloud Nine and Easy Seat were covered under general liability insurance policies issued by West American Insurance Company (an entity related to Ohio Casualty). Effective June 10, 2001, Cloud Nine and

4

Easy Seat obtained a commercial insurance policy issued by Ohio Casualty. That policy was effective through June 10, 2002, and included general liability insurance coverage.

Between June 10, 2002, and December 12, 2002, Cloud Nine and Easy Seat were uninsured. Effective December 12, 2002, Cloud Nine and Easy Seat obtained a commercial insurance policy issued by Unigard. Unigard proceeded to issue two consecutive policies to Cloud Nine and Easy Seat. Collectively, the Unigard policies provided general liability insurance coverage for the period from December 12, 2002, through December 12, 2005.

*The declaratory judgment proceedings*

Shortly after being served with Edizone's complaint, Cloud Nine and Easy Seat tendered their defense to West American, Ohio Casualty and Unigard. West American and Ohio Casualty denied the tender and filed this diversity action against Cloud Nine, Easy Seat, the Fords, an individual associated with the Fords named Rex Haddock, and Edizone. The suit sought an order declaring that West American and Ohio Casualty had no duty to defend or indemnify the named defendants for any claims asserted in the Edizone suit. Unigard accepted the tender of defense under a reservation of rights and then successfully intervened in this suit.

Unigard subsequently filed a motion for partial summary judgment asking the district court to determine as a matter of law whether Unigard and Ohio Casualty had a duty to defend the Cloud Nine defendants in the Edizone suit, and, if so, how the costs of

5

defense should be allocated between Unigard and Ohio Casualty.[1] On November 14, 2006, the district court issued an order and memorandum decision granting Unigard's motion and concluding that "both Unigard and Ohio Casualty ha[d] a duty to defend the Cloud Nine Defendants in the underlying action . . . ." Id. at 2075. Of particular relevance here, the district court also held that "the defense costs in the Edizone [suit] (incurred and to be incurred) [we]re to be shared by Ohio Casualty and Unigard on an equal basis." Id. at 2078. In reaching this conclusion, the district court noted that the Unigard and Ohio Casualty policies had identical provisions for Other Insurance and Method of Sharing, that provided, in pertinent part:

**Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a. **Primary Insurance**

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

\* \* \*

c. **Method of Sharing**

_____

[1] Although West American was a plaintiff in the case, ultimately no one claimed that West American had a duty to defend the Cloud Nine defendants in the Edizone suit (probably because West American's policies preceded the alleged wrongful conduct committed by the Cloud Nine defendants). App. at 2063 n.1.

6

> If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.
>
> If any other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

Id. at 2076-77 (emphasis added by district court). The district court agreed with Unigard that these provisions "plainly provide[d] for allocation of equal shares, and [that] because there [we]re two insurers, . . . an equal split of defense costs [wa]s the appropriate allocation." Id. at 2077. And the district court rejected Ohio Casualty's assertion that the "policies' Other Insurance provisions only applie[d] to the circumstance in which there [we]re two concurrent primary policies, [with] overlapping insurance policy periods." Id.

On November 28, 2006, Ohio Casualty moved for reconsideration of the portion of the district court's order "regarding the allocation of defense expenses . . . ." Id. at 2092. In its motion, Ohio Casualty argued that the district court had erred in relying "upon the insurance policies['] 'other insurance' clauses to avoid the 'time on the risk' method of apportionment of defense costs required by the Utah Supreme Court's decision in Sharon Steel Corp. v. Aetna Cas. and Surety Co., 931 P.2d 127, 141-142 (1997)." Id. at 2080.

On January 4, 2007, the district court issued an order and memorandum decision denying Ohio Casualty's motion for reconsideration. In doing so, the district court concluded that Ohio Casualty's motion simply "repeat[ed] and re-emphasize[d]

7

arguments it presented to the court during initial consideration of Unigard's Motion for Partial Summary Judgment." Id. at 2134.

On November 20, 2007, the parties filed a stipulated motion to dismiss. The parties emphasized that, "[b]y stipulation to th[e] motion, Ohio [Casualty] expressly reserve[d] the right to appeal th[e] Court's ruling regarding the allocation of defense costs and all attorneys' fees incurred in the Underlying action issued on November 14, 2006 (motion for reconsideration denied on January 24, 2007) . . . ." Id. at 2137.

On November 27, 2007, the district court granted the parties' motion and dismissed all remaining claims with prejudice.

Ohio Casualty filed a notice of appeal from the district court's order granting Unigard's motion for partial summary judgment "regarding the allocation of defense costs and all attorneys' fees incurred in defending" against the Edizone suit. Id. at 2148-49.

> On appeal, we certified the following question to the Utah Supreme Court:
>
> Should the defense costs in the Edizone case be allocated between Ohio Casualty and Unigard under the "equal shares" method set forth in the "other insurance clause" of Ohio Casualty's policy, or, in the alternative, because the policies were issued for successive periods, should those defense costs be allocated using the time-on-risk method described in Sharon Steel Corp. v. Aetna Casualty & Surety Co., 931 P.2d 127, 140 (Utah 1997)?

Ohio Cas. Ins. Co. v. Unigard Ins. Co., 564 F.3d 1192, 1194 (10th Cir. 2009).

The Utah Supreme Court accepted our question and, on January 6, 2012, issued an opinion answering it.

8

## II

### *Standard of review*

"Because this is a diversity case, we apply the substantive law of the forum state, Utah," in addressing Ohio Casualty's arguments. MediaNews Group, Inc. v. McCarthey, 494 F.3d 1254, 1260 (10th Cir. 2007). Further, because this appeal arises out of the district court's summary judgment ruling, we review that decision de novo, "applying the same legal standard employed by the district court." Id. "When," as here, "the relevant facts are undisputed, this Court reviews de novo the district court's interpretation of [the] insurance polic[ies] [at issue] as well as its other legal conclusions made on summary judgment." Milburn v. Life Investors Ins. Co. of Am., 511 F.3d 1285, 1288-89 (10th Cir. 2008).

### *The Sharon Steel decision*

In Sharon Steel, 931 P.2d 127 (Utah 1997), the Utah Supreme Court addressed the question of "[w]hether an insurer can compel contribution from a coinsurer who is equally obligated to defend . . . ." 931 P.2d at 137. At the outset, the Utah Supreme Court noted that "[s]ome jurisdictions ha[d] held that because the duty to defend is personal to each insurer, the obligation is several and where many carriers are obligated to defend, each separate carrier is neither entitled to divide the duty nor require contribution from another absent a specific contractual right," while "the trend in other jurisdictions ha[d] been to allow an insurer, under the doctrines of contribution or equitable subrogation, to recover costs of defense from other insurers who were equally

9

obligated to defend yet failed to do so." Id.  The Utah Supreme Court ultimately adopted

the latter position, "agree[ing] with those jurisdictions that have allowed contribution . . .

." Id.  In turn, the Utah Supreme Court "remand[ed] the case to the trial court" to first

"determine which defense expenditures were reasonable," and then to apportion those

costs between the two insurers at issue. Id. at 140.

In remanding the case, the Utah Supreme Court "offer[ed] [the following]

guidance to the trial court in apportioning th[e] defense costs." Id.  The Utah Supreme

Court first noted that, "[i]n general, when apportioning defense costs among insurers,

courts apply equitable principles . . . unless express policy language decrees the method

of apportionment." Id. (internal quotation marks omitted).  The Utah Supreme Court in

turn concluded that the most equitable approach "in continuing injury cases . . . where

multiple policies are triggered for consecutive injuries" was a modified "time on the risk"

method "that not only look[ed] at the years that each insurer was on the risk, but also

t[ook] into account the respective policy limits." Id. at 140.  Under this approach, the

Court held, defense costs are to be apportioned by "multiplying th[e] policy limits by the

years of coverage . . . ." Id.

The Court also noted that "[f]or many of the years that the insured in the" case

before it "was disposing of hazardous waste [the action that gave rise to the underlying

suit], it was either self-insured, uninsured, or for some other reason had no outside

coverage." Id. at 141.  After surveying decisions from other courts addressing similar

circumstances, the Court adopted "the view . . . that the property owner must be prepared

10

to pay their 'fair share' of defense costs for those years that they were without insurance coverage." Id. (quoting Ins. Co. of North Am. v. Forty-Eight Insulations, Inc., 633 F.2d 1212, 1224-25 (6th Cir. 1980)). "Thus," the Court "remand[ed] the case with instructions to the trial court to fashion an equitable allocation scheme that t[ook] into account the years when the insured was uninsured and to allocate that share to the insured." Id. at 141-42.

*The Utah Supreme Court's answer to our certified question*

In answering our certified question in this case, the Utah Supreme Court concluded at the outset "that the 'other insurance' clauses [in the Unigard and Ohio Casualty policies] do not apply to successive insurers and therefore do not control the apportionment of costs in this case." Ohio Cas. Ins. Co. v. Unigard Ins. Co., No. 20090340, Slip Op. at 5 (Utah Jan. 6, 2012). The Utah Supreme Court explained:

> Ohio Casualty's coverage of Cloud Nine was expressly limited to losses that arose out of offenses "committed . . . during the policy period," which terminated on June 10, 2002. Similarly, Unigard's policy did not cover losses that occurred before its effective date, December 12, 2002. As Ohio Casualty's coverage and Unigard's coverage did not overlap, Unigard did not provide valid and collectible insurance for a loss that Ohio Casualty covered or vice-versa. As a result, the "other insurance" clause with its "equal shares" provision is inapplicable.

Id. at 6. The Utah Supreme Court also rejected Unigard's argument that the "other insurance" clauses demonstrated a general intent to apportion indemnity loss equally. Id. at 7.

The Utah Supreme Court then "turn[ed] to equitable principles to determine how

11

to apportion [the] defense costs between Ohio Casualty and Unigard," id., and it concluded there was "no reason to drastically deviate from [its] holding in Sharon Steel," id. at 9. More specifically, the Utah Supreme Court chose to "apportion defense costs in this case" based upon "the time-on-the-risk formula adopted in Sharon Steel." Id. The Utah Supreme Court declined, however, "to follow that portion of Sharon Steel that apportioned defense costs to the insured for those periods of time when the insured was without coverage." Id. at 9-10. The Utah Supreme Court explained that, "[i]n light of th[e] practice" of insurers to "reserve the exclusive right to control any litigation and make important decisions regarding the course of the litigation," "it would be inequitable to hold the insured responsible for the share of defense costs attributable to the time period during which it was uninsured." Id. at 10. The Utah Supreme Court also noted that "[w]here, as in this case, there are multiple insurers, the broad duty to defend also prevents the insurers from recovering defense costs from the insured for any periods of non-coverage." Id.

Finally, the Utah Supreme Court summarized how the modified Sharon Steel formula should be applied in this case:

> This formula begins by apportioning the defense costs between successive insurers according to their time on the risk and the amount of their policy limits. It then divides the portion of defense costs attributable to any periods during which the insured lacked coverage in the same proportions.

Id.

12

*The district court's decision*

In light of the Utah Supreme Court's answer to our certified question, we conclude that the district court erred in granting partial summary judgment in favor of Unigard. More specifically, we conclude that the district court erred in holding that the "Other Insurance" provisions in the Unigard and Ohio Casualty policies mandated equal sharing of the costs of defense for the Edizone suit. As the Utah Supreme Court has now made clear, the costs of defense for the Edizone suit are to be apportioned between Unigard and Ohio Casualty under the modified Sharon Steel formula.

## III

The decision of the district court granting partial summary judgment in favor of Unigard on the issue of defense cost sharing is REVERSED and the case REMANDED to the district court with directions to enter judgment consistent with the Utah Supreme Court's answer to our certified question.[2]

Entered for the Court

Mary Beck Briscoe
Chief Judge

---

[2] Although Ohio Casualty did not file its own motion for partial summary judgment on the issue of defense cost sharing, it did argue, in response to Unigard's motion for partial summary judgment, that in the event the district court concluded that Ohio Casualty had a duty to defend in the Edizone suit, the method for sharing defense costs should be determined under the Sharon Steel formula. In light of this argument, we conclude it is appropriate to direct the entry of judgment consistent with the Utah Supreme Court's answer to our certified question, rather than requiring the parties to file any further pleadings in the district court on remand.

13