**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 20, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MARYLAND CASUALTY COMPANY,

 Plaintiff - Appellee/Cross-Appellant,

v.

MID-CONTINENT CASUALTY
COMPANY,

 Defendant - Appellant/Cross-Appellee.

Nos. 17-4032 & 17-4037
(D.C. No. 2:14-CV-00522-DB)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **HARTZ**, and **PHILLIPS**, Circuit Judges.
_____

Both party insurance companies issued a commercial general liability policy to

Red Point Homes, Incorporated ("Red Point").  When Red Point was sued for defective

design and construction of a condominium project in state court, only Maryland Casualty

Company defended Red Point.  Mid-Continent refused to defend Red Point, arguing it

had no duty to defend because of policy exclusions.

After the state court action was concluded, Maryland filed a complaint against

Mid-Continent in the United States District Court for the District of Utah seeking a

declaratory judgment, equitable contribution, and also alleging breach of contract.  The

---

 [*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

district court concluded Mid-Continent had a duty to defend Red Point as a matter of law. The district court also awarded Maryland prejudgment interest and costs based on the United States Prime Interest Rate, not the interest rate set by Utah Code Ann. § 15-1-1(2). Both parties appeal. We exercise jurisdiction under 28 U.S.C. § 1291 and AFFIRM.

# I

*Facts*

## 1. Maryland's Policy

Maryland's sole policy with Red Point, Policy No. SCP 37187979, was effective from November 17, 2001 to November 2002, and had a $500,000 per occurrence limit and a $1,000,000 aggregate limit of liability. App., at 660–61. Maryland's policy includes a "transfer of rights of recovery against others" provision, which states, "[i]f the insured has rights to recover all or part of any payments we have made under this Coverage Part, those rights are transferred to us." Id. at 467.

## 2. Mid-Continent's Policies

Mid-Continent issued to Red Point the following policies: (i) Policy No. 04-GL-000096996, effective November 17, 2002 to November 17, 2003; and (ii) Policy No. 04-GL-000527867, effective November 17, 2003 to November 17, 2004. Id. at 660. Each of the Mid-Continent policies had a $1,000,000 per occurrence limit and $2,000,000 aggregate limit of liability. Id.

### a. Coverage

Under "Coverage A" for "Bodily Injury and Property Damage Liability," Mid-Continent's policies provide as follows:

2

1.  Insuring Agreement

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .
>
> b. This insurance applies to "bodily injury" and "property damage" only if:
>
>> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>>
>> (2) The "bodily injury" or "property damage" occurs during the policy period . . . .

Id. at 80.

Mid-Continent's policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

Id. at 93. The Mid-Continent policies define "property damage" as:

> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

Id. at 94.

*b. Exclusions*

Mid-Continent's policies contain two relevant exclusions to policy coverage. First, Mid-Continent's policies are modified by endorsement CG 22 94 10 01, which contains a "your work" exclusion, stating:

3

This insurance does not apply to:
I. Damage To Your Work
"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard[.]"

Id. at 101.

The policies define "your work" as:

> a. Means:
> (1) Work or operations performed by you or on your behalf; and
> (2) Materials, parts or equipment furnished in connection with such work or operations.
> b. Includes
> (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and
> (2) The providing of or failure to provide warnings or instructions.

Id. at 95.

Mid-Continent's policies also contain an "impaired property" exclusion, which states:

> This insurance does not apply to . . . .
>
> m. Damage To Impaired Property Or Property Not Physically Injured
>
> "Property damage" to "impaired property" or property that has not been physically injured, arising out of:
>
> > (1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
> >
> > (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

4

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

Id. at 81, 84.

The Mid-Continent policies define "impaired property" as:

tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate, or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement,

if such property can be restored to use by:

a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

b. Your fulfilling the terms of the contract or agreement.

Id. at 92.

*3. Underlying Action*

On May 2, 2008, Intrigue Homeowner's Association (the "Association") filed a sixteen-count complaint against Red Point, Intrigue L.C., Brent Mitchell, and John Does 1–30 for alleged defective design and construction of a condominium project—the Intrigue Project—in Salt Lake City. Id. at 119–202. Exactly two years later, the Association amended its complaint to include ten causes of action against the same defendants.

Relevant allegations in the complaints include:

5

> The Owners and the Association have observed the interior and exterior surfaces and roofs of the Units and the common areas are experiencing and continue to experience one or more accidental events that include exposure to and actual repeated and/or continuous and substantial water intrusion through the stucco, sidewalls, exterior walls, doors, windows, window boxes, and roofs. Additionally, the Owners and Association have observed that the common areas and limited common areas are experiencing and continue to experience one or more accidental events that include concrete degradation, expansive soils, and asphalt degradation. In this and subsequent paragraphs of the Complaint, such event or events are referred to separately and collectively as "water intrusion" and "soil subsidence."

Id. at 124.

> Water intrusion and soil subsidence has caused and continues to cause one or more accidental events of extensive property damage to the Units and common areas to the extent that some or all of the Units and common areas are and/or will become unsafe, unliveable [sic], unsanitary, and/or unusable. The property damage includes, but is not limited to, dryrot, mold, exterior water staining, elevated moisture levels throughout the stucco walls, cracks and degradation of the stucco system, cracking and sinking sidewalks and driveways, stairs and curbs that are crumbling, and asphalt roads that are falling apart. The property damage is effected and exacerbated by ongoing water intrusion into cracking stucco and concrete of the Units and/or common areas. In this and subsequent paragraphs of this Complaint, such damage, is referred to collectively and separately as "water damage," and "subsidence damage."

Id. at 125.

> The continued water intrusion, water damage, construction defects, soil subsidence, subsidence damage, and consequential damage to the Units at the Intrigue, was and is being caused by Developer, Red Point, and Mitchell and continues to substantially and unreasonably interfere with Plaintiff's and/or the individual Owners' use and enjoyment of common areas and Units and constitute a private nuisance.

Id. at 139.

> The water intrusion and construction defects . . . have caused and will continue to cause injury and damages, including, but not limited to: continued severe water intrusion through the roofs, exterior walls, and through and around windows and deck doors into interior walls and unit

6

spaces creating water staining, elevated moisture levels throughout the stucco walls, cracking and degradation of the building components including inside wall spaces, stone veneers, cracking and degradation of concrete flatwork and asphalt paving, and loss of the use of Units and personal property within the Units.

Id. at 176.

The breach of such extra contractual duties is the direct and proximate cause of damage and losses to the Association, its real and personal property and its interests; potential damages to persons and property; damages and losses to the Units and common areas and other property; and damage to the work of others.

Id. at 166.

Such conduct has resulted in continuous damage to Plaintiff's property, including extensive subsidence damage, water damage, and consequential damage as more specifically alleged in the paragraphs above, and elsewhere herein. These problems and damages are continuing.

Id. at 148.

Notwithstanding their duties to develop and build the Project in compliance with the applicable building codes, Developer, Mitchell, and John Does 1–30 built the Intrigue knowing that the Project was developed and constructed with certain water intrusion, water damage, soil subsidence, subsidence damage, and with the construction defects alleged in the paragraphs above, and elsewhere herein. These defects and the resultant damage and/or risks of damage were and are in violation of the building, fire, safety, and/or structural codes. Defendants were negligent in committing these violations of the applicable codes and the Association's Declaration and Bylaws.

Id. at 154.

Wherefore, Plaintiff requests . . . [t]he Court enter its order . . . [f]or consequential damages in an amount to be proven at trial.

Id. at 201–02.

7

Maryland defended Red Point in the underlying action. Id. at 661. Red Point

repeatedly requested a defense from Mid-Continent as well. Id. Mid-Continent denied

Red Point's requests for a defense, and reflected its refusal in letters dated December 3,

2008; September 21, 2009; September 14, 2011; and May 16, 2014. Id. Red Point and

the Association settled on March 1, 2013. Id. at 502–10. In the settlement agreement,

Red Point effected and confirmed the assignment to Maryland of any claims it had

against Mid-Continent for defense costs, as established by the transfer of rights provision

in Red Point's policy with Maryland. Id. at 505.

*Case History*

On July 15, 2014, Maryland filed its three-count complaint against Mid-Continent

for declaratory judgment (Count I); equitable contribution (Count II); and breach of

contract (Count III), which Maryland had standing to pursue based on the transfer of

rights provision in its policy. Id. at 1–6. Mid-Continent answered the complaint and

asserted thirty-eight affirmative defenses, including that Maryland's claims were barred

by the statute of limitations. Id. 8–19.

Maryland then moved for partial summary judgment, seeking a ruling from the

district court that Mid-Continent had a duty to defend in the underlying action as a matter

of law. Id. at 21–22, 37. The district court granted Maryland's motion. Id. at 535. The

district court concluded Maryland's claims were timely. Id. at 533. The district court

also held Mid-Continent had a duty to defend Red Point in the underlying action because

Mid-Continent failed to establish that its policy exclusions applied to all of the

allegations in the underlying action, and because at least some of the allegations in the

8

underlying action created potential liability for Mid-Continent. <u>Id.</u> at 534. Mid-Continent filed a motion for reconsideration of the district court's order, which the district court denied. <u>Id.</u> at 536–46, 571–72.

After Maryland prevailed on its motion and established that Mid-Continent owed Red Point a defense, Maryland moved for an award of prejudgment interest and costs. <u>Id.</u> at 581. The district court granted Maryland's motion and applied the U.S. Prime Interest Rate (3.25–3.50% during the applicable period), rather than the rate set by Utah Code Ann. § 15-1-1(2) (10.00%). <u>Id.</u> at 657–58.

Thereafter, the parties jointly stipulated: "Judgment should be entered against Mid-Continent in the amount of $334,000 plus prejudgment interest, based upon the U.S. prime interest rate, which is $57,760.84 through January 30, 2017, and continues to accrue at the same rate of $31.64 per day." <u>Id.</u> at 665. In the joint stipulation, Mid-Continent reserved the right to appeal the district court's conclusions that: (i) Maryland's claims were not barred by the statute of limitations, and (ii) Mid-Continent had a duty to defend Red Point in the underlying action. <u>Id.</u> at 664–65. Maryland reserved the right to appeal the district court's use of the U.S. Prime Rate. <u>Id.</u> at 665.

On January 31, 2017, the district court entered final judgment "against Mid-Continent . . . and in favor of Maryland . . . in this action in the amount of $334,000 plus pre-judgment interest." <u>Id.</u> at 668. Mid-Continent timely filed a Notice of Appeal on March 1, 2017. <u>Id.</u> at 00.

9

## II

### *Standard of Review*

This court reviews a grant of summary judgment de novo, applying the same legal standard used by the district court under Fed. R. Civ. P. 56(a). Twigg v. Hawker Beechcraft Corp., 659 F.3d 987, 997 (10th Cir. 2011). We affirm if "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Carter v. Pathfinder Energy Servs., Inc., 662 F.3d 1134, 1141 (10th Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). "A fact is 'material' if under the substantive law it could have an effect on the outcome of the lawsuit. An issue is 'genuine' if 'a rational jur[or] could find in favor of the nonmoving party on the evidence presented.'" Adams v. Am. Guarantee & Liab. Ins. Co., 233 F.3d 1242, 1246 (10th Cir. 2000) (citation omitted). "[T]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [its] favor." Tolan v. Cotton, 134 S. Ct. 1861, 1863 (2014) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).

## III

We are tasked on appeal with determining whether: (i) Maryland's complaint against Mid-Continent is barred by the statute of limitations, and (ii) the complaint allegations in the underlying action were potentially covered under Mid-Continent's policies, triggering Mid-Continent's duty to defend Red Point. We are also asked on cross-appeal to decide whether Maryland's prejudgment interest should have been calculated at a 10% interest rate under Utah Code Ann. § 15-1-1(2) or under the 3.25–3.50% U.S. Prime Rate.

10

We conclude: (i) the statute of limitations does not bar Maryland's complaint; (ii) the allegations in the underlying action against Red Point were potentially covered under Mid-Continent's policies, triggering Mid-Continent's duty to defend; and (iii) the U.S. Prime Rate was correctly applied.

*1. Statute of Limitations*

Mid-Continent argues Maryland's claim for equitable contribution (Count II) is not timely because the claim is subject to Utah's four-year statute of limitations applicable to claims in equity, Utah Code Ann. § 78B-2-307(3), not Utah's six-year statute of limitations applicable to claims based upon an instrument in writing, Utah Code Ann. § 78B-2-309(2).[1] Aplt. Op. Br., at 3–4. In relevant part, Section 78B-2-309 provides:

> An action may be brought within six years:
>
> ***
>
> (2) upon any contract, obligation, or liability founded upon an instrument in writing . . . .

[1] The district court concluded Utah's six-year statute of limitations, instead of the four-year statute of limitations, applies to Maryland's complaint in its entirety. See App., at 533 ("Plaintiff's action is also timely. The action is based upon a contract . . . and is thus governed by Utah's six year statute of limitations." (emphasis added)). In the parties' joint stipulation, Mid-Continent reserved the right to appeal the district court's conclusion that all of Maryland's claims were timely. See id. at 664–65. But on appeal, Mid-Continent only takes issue with the district court's application of the six-year statute of limitations to Maryland's equitable contribution claim (Count II), not to Maryland's declaratory judgment claim (Count I), or its breach of contract claim (Count III), as Mid-Continent repeatedly refers only to Maryland's "claim for equitable contribution." See., e.g., Aplt. Op. Br., at 3–4.

11

Utah Code Ann. § 78B-2-309(2). In relevant part, § 78B-2-307 states, "[a]n action may be brought within four years . . . for relief not otherwise provided for by law." § 78B-2-307(3). We conclude Maryland's action, including its equitable contribution claim, is subject to Utah's six-year statute of limitations and thus is timely.[2]

*Are Maryland's Claims Exclusively Claims in Equity?*

In support of its argument that Maryland's claims are barred by Utah's four-year statute of limitations, and that Utah's six-year statute of limitations does not apply to them, Mid-Continent contends all of Maryland's claims sound solely in equity.[3] Here, Mid-Continent cites to two cases.

---

[2] The Mid-Continent policies do not contain a choice of law provision, App., at 28; neither Mid-Continent nor Maryland dispute that Utah law applies in this case. See Hous. Gen. Ins. Co. v. Am. Fence Co., 115 F.3d 805, 806 (10th Cir. 1997) ("The interpretation of an insurance contract is governed by state law and, sitting in diversity, we look to the law of the forum state.").

[3] Mid-Continent argues that Maryland sought in the district court only to enforce its equitable rights, not any obligation under the Mid-Continent policies. See Aplt. Resp. Br., at 7, 13–14. However, in its complaint, Maryland sought relief under a breach of contract claim. See App., at 1–6.

Mid-Continent also argues that "Maryland sought and received summary judgment only on its claim for equitable contribution," which Mid-Continent reiterates was the only claim "decided by the District Court." See, e.g., Aplt. Reply, at 10, 11 (emphasis omitted). Maryland did not seek partial summary judgment on Count II of its complaint for equitable contribution. Maryland's motion sought "a ruling from th[e] Court holding, as a matter of law, that Mid-Continent had a duty to defend." App., at 21. Maryland's motion for partial summary judgment, therefore, was on Count I of the complaint for declaratory judgment. See id. at 23.

Finally, these arguments are red herrings because Mid-Continent subsequently stipulated to—and the district court entered—judgment against Mid-Continent on the complaint in its entirety (which Mid-Continent disputes). See id. at 665 ("Judgment should be entered against Mid-Continent."); id. at 668 ("The Court enters judgment

Continued . . .

12

First, according to Mid-Continent, <u>Sharon Steel Corp. v. Aetna Casualty & Surety</u>

<u>Co.</u>, 931 P.2d 127 (Utah 1997), "implicitly rejected the argument that an insurer's policy

language has anything to do with whether" the "insurer has the right to bring or is subject

to a claim for contribution," and held that "such a claim sounds solely in equity." Aplt.

Op. Br., at 19. We read <u>Sharon Steel</u> differently.

The issue in <u>Sharon Steel</u> was "[w]hether an insurer can compel contribution [for

defense costs] from a coinsurer who [wa]s equally obligated to defend." 931 P.2d at 137.

Because this issue was one of first impression in Utah, the Utah Supreme Court turned

"to other jurisdictions for guidance." <u>Id.</u> The court stated that "[s]ome jurisdictions have

held that because the duty to defend is personal to each insurer, the obligation is several

and where many carriers are obligated to defend, each separate carrier is neither entitled

to divide the duty nor require contribution from another absent a specific contractual

right." <u>Id.</u> The court also noted, "the trend in other jurisdictions has been to allow an

insurer, under the doctrines of contribution or equitable subrogation, to recover costs of

defense from other insurers who were equally obligated to defend yet failed to do so." <u>Id.</u>

The court then "agree[d] with those jurisdictions that have allowed contribution where

one insurer has paid more than its fair share of defense costs." <u>Id.</u> at 137–38. In so

holding, the court did nothing to eliminate the existing right to recover under "a specific

contractual right." <u>See id.</u> But rather, the court expanded an insurer's avenues for

_____

(cont'd)
against Mid-Continent . . . and in favor of Maryland . . . <u>in this action</u>.") (emphasis
added).

13

recovery after it had provided a defense to a mutually insured, allowing it to seek contribution from the other insurer <u>even in the absence of a contractual right of recovery</u>. <u>See</u> <u>id.</u> Mid-Continent's argument—that <u>Sharon Steel</u> held an insurer's <u>only</u> right of recovery is in equity—flies in the face of <u>Sharon Steel</u>'s justification for its conclusion, that "[w]here it can be shown that a co-insurer failed to defend or failed to pay its share of the defense expenditures, that insurer should not be rewarded and payment excused when another co-insurer has taken upon itself the provision of that defense." <u>Id.</u> at 138.

Mid-Continent next cites to <u>Ohio Casualty Insurance Co. v. Unigard Insurance Co.</u>, 268 P.3d 180 (Utah 2012), claiming <u>Unigard</u> "expressly rejected the notion that insurers' policies govern their rights with regard to a claim for contribution as to an insured's defense costs." Aplt. Op. Br., at 19. This is a misreading of <u>Unigard</u>.

The issue in <u>Unigard</u> was how to apportion defense costs among insurers, not whether one of two insurers had a duty to defend a mutually insured.[4] 268 P.3d at 183. The Utah Supreme Court in <u>Unigard</u> apportioned defense costs using a time "on-the-risk" method—an equitable principle—instead of applying the insurers' policy provisions. <u>Id.</u> at 186. The court used the time "on-the-risk" method because, having first looked to the insurance polies, the court concluded the policy language did not contain "express policy language that decree[d] the method of apportionment and therefore d[id] not govern the apportionment of defense costs." <u>Id.</u> at 185 (internal quotation marks omitted). Contrary

---

[4] Ironically, the court in <u>Unigard</u> stated the plaintiff had a duty to defend, not based in equity, but based in contract: "Unigard correctly notes that <u>both insurers had a duty to defend based on</u> . . . <u>the policy language</u> . . . ." 268 P.3d at 186 (emphasis added).

14

to Mid-Continent's argument, <u>Unigard</u> did not conclude that insurance policies are irrelevant. Rather, <u>Unigard</u> held that courts should first look to policies when apportioning defense costs: "When determining how to apportion defense costs among insurers, we 'apply equitable principles . . . <u>unless</u> express policy language decrees the method of apportionment.'" <u>Id.</u> (emphasis added) (quoting <u>Sharon Steel</u>, 931 P.2d at 140).

Unigard's conclusion is consistent with the Utah Supreme Court's earlier ruling in <u>Sharon Steel</u>. <u>Unigard</u> noted that using a time "on-the-risk" method "comport[ed] with [the Utah Supreme Court's] policy of encouraging prompt and effective defense of the insured by the insurer." <u>Id.</u> at 186. In <u>Sharon Steel</u>, the Utah Supreme Court similarly justified its conclusion—allowing insurers to pursue claims in equity against other insurers <u>in addition to</u> claims in contract—as a means to encourage a defense of the insured and to avoid rewarding insurers that are obligated but fail to provide a defense. As these Utah Supreme Court cases indicate, Maryland is not limited to a claim in equity but may have recovery rights against Mid-Continent in contract as well.

*Are Maryland's Claims "Founded upon an Instrument in Writing"?*

<u>Lilley v. JP Morgan Chase</u>, 317 P.3d 470 (Utah Ct. App. 2013),[5] instructs us how to determine whether claims are "founded upon an instrument in writing," Utah Code

---

[5] Mid-Continent unpersuasively attempts to analogize the facts of <u>Lilley</u> to those before us. Aplt. Op. Br., at 20. The Court of Appeals of Utah concluded in <u>Lilley</u> that the language of the "relevant written document[ ]," 317 P.3d at 474—an appraisal report, which was intended "to assist the lender in evaluating the subject property for lending purposes," <u>id.</u> at 473—was "not sufficiently connected with Plaintiffs' cause[s] of action"

Continued . . .

15

Ann. § 78B-2-309(2), which would render them subject to Utah's six-year statute of limitations. Lilley explains: "if the fact of liability arises or is assumed or imposed from the instrument itself, or its recitals, the liability is founded upon an instrument in writing." Id. at 474 (quoting Bracklein v. Realty Ins. Co., 80 P.2d 471, 476 (Utah 1938)). "The liability must 'grow[ ] out of written instruments, not remotely or ultimately, but immediately.'" Id. (quoting Bracklein, 80 P.2d at 476) (alteration in original). "If the instrument acknowledges or states a fact from which the law implies an obligation to pay, such obligation is founded upon a written instrument within the statute." Id. (quoting Bracklein, 80 P.2d at 476). "If the writing upon its face shows a liability to pay, such liability is on a written instrument within the statute of limitations." Id. (quoting Bracklein, 80 P.2d at 476).

Maryland's complaint contains claims for: declaratory judgment (Count I), equitable contribution (Count II), and breach of contract (Count III). App., at 1–6. All three claims are "founded upon . . . instrument[s] in writing." See Utah Code Ann.

---

(cont'd)

for breach of contract, id. at 474, and negligence; thus, the claim was not "founded upon an instrument in writing," id. The court concluded nothing in the appraisal report "suggest[ed], either implicitly or on its face, that 'liability arises or is assumed or imposed' upon" defendant, "[n]or d[id] the report provide for any remedies to Plaintiffs in the event of a breach." Id. at 474–75 (quoting Bracklein v. Realty Ins. Co., 80 P.2d 471, 476 (Utah 1938)).

Here, unlike in Lilley, the language of the "relevant written documents"—both parties' policies—is "sufficiently connected" to Maryland's cause of action alleging that, under the policies, Mid-Continent breached its duty to defend Red Point. See, e.g., App., at 80. Further, Mid-Continent's policies provide remedies to Red Point in the event of a breach, and Red Point assigned its rights to Maryland, who now has the same rights of recovery under the policies as Red Point had. See App., at 467, 505.

16

§ 78B-2-309(2). Maryland's claims are founded upon Red Point's policies with both Mid-Continent and Maryland.

Were it not for Red Point's policies with Mid-Continent, Mid-Continent would not potentially have a duty to defend Red Point in the underlying action, and Red Point would not potentially have a claim against Mid-Continent for failure to defend. See App., at 80 ("We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages."). Further, were it not for Red Point's policy with Maryland, which contained the transfer of rights provision, Maryland would not potentially have the right to recover from Mid-Continent under Counts I (declaratory judgment) and III (breach of contract). See id. at 467 ("If the insured has rights to recover all or part of any payments we have made under this Coverage Part, those rights are transferred to us."). The dissent believes Maryland's only claim against Mid-Continent is for equitable subrogation, which "obviously sounds in equity." Dissent, at 1. However, Maryland cannot prove its claim for equitable contribution (which we agree, obviously, sounds in equity) without first proving Mid-Continent had a duty to defend—a claim that immediately grows out of the written instrument between Mid-Continent and Red Point. Were it not for a potential duty to defend Red Point (Count I) and a failure to do so, resulting in a breach of Mid-Continent's agreement with Red Point (Count III), Maryland would not have a right to recover any sum Mid-Continent owed to Red Point, which Maryland covered in the

17

underlying action (Count II). Thus, Mid-Continent's potential liability to Maryland in this action grows directly out of both policies.

Maryland's complaint is therefore subject to Utah's six-year statute of limitations.[6] Mid-Continent first denied a defense to Red Point in December 2008, giving rise to Maryland's claims. Maryland filed the complaint in July 2014, within the six-year statute of limitations. Maryland's claims are thus timely.

The dissent argues Maryland could not have a contract claim against Mid-Continent. In support, the dissent states Maryland's claim must arise from Red Point's assignment to Maryland. But since Maryland had paid all of the defense costs, Red Point suffered no injury and therefore had no contract claim to assign.

While this is an interesting point, it was not raised by Mid-Continent on appeal, even though the district court entered final judgment on all of Maryland's claims which included contract claims. The district court entered final judgment on January 31, 2017

---

[6] Mid-Continent alternatively argues that we should certify the following question to the Utah Supreme Court: whether Utah's four-year statute of limitations for equitable actions or its six-year statute of limitations for claims founded upon an instrument in writing applies to equitable contribution claims between consecutive insurers for the same insured. Aplt. Mot. for Cert., at 1.

We decline to do so. Mid-Continent's question overlooks that we are not presented with only an equitable contribution claim, but also claims for declaratory judgment and breach of contract. Moreover, the law is settled: claims "founded upon an instrument in writing" are subject to Utah's six-year statute of limitations, Utah Code Ann. § 78B-2-309(2), while claims "for relief not otherwise provided for by law," Utah Code Ann. § 78B-2-307(3), are subject to a four-year statute of limitations, or Utah's catchall statute of limitations. Determining the applicable statute of limitations is a fact-specific inquiry based on whether the claims are or are not "founded upon an instrument in writing." See § 78B-2-309(2).

18

"against Mid-Continent . . . and in favor of Maryland . . . in this action in the amount of $334,000 plus pre-judgment interest." App., at 668 (emphasis added). "[T]his action" included Maryland's contract claim.[7] Further, we also have language in the district court's order granting Maryland's motion for partial summary judgment—that "[t]he action is based upon a contract." Id. at 533. With these judgments in hand, Mid-Continent was on notice that the judgments entered against it and in favor of Maryland were based, at least in part, on contract.

*2. Mid-Continent's Duty to Defend Red Point*

Mid-Continent next argues it did not owe a defense to Red Point in the underlying action. We conclude the complaints' allegations were potentially covered under Mid-Continent's policies, triggering Mid-Continent's duty to defend.

"Under Utah law, the insurer has a duty to defend claims that arguably fall within the scope of the coverage provided." Headwaters Res., Inc. v. Ill. Union Ins. Co., 770 F.3d 885, 891 (10th Cir. 2014) (emphasis added). To determine whether the complaints' allegations in the underlying action "arguably fell" within the scope of Mid-Continent's coverage, we apply the "eight corners rule." Id. "Under the eight corners rule, an insurer's coverage liability is determined by comparing the allegations within the four corners of the complaint to the language contained in the four corners of the insurance policy." Id. "On this basis, the duty to defend 'is triggered when the allegations in the

---

[7] If the district court did not rule on all pending claims, including Maryland's breach of contract claim, Mid-Continent's appeal would be subject to dismissal as an appeal from a non-final ruling. See 28 U.S.C. § 1291.

19

underlying complaint[,] if proved, <u>could result in liability</u> under the policy.'" <u>Id.</u> (emphasis added) (citation omitted). Mid-Continent has the "burden to 'demonstrate that <u>none</u> of the allegations of the underlying claim is <u>potentially covered</u> (or that a policy exclusion <u>conclusively applies</u> to <u>exclude all potential</u> for such coverage).'" <u>Id.</u> (emphasis added) (citation omitted).

Mid-Continent argues that two policy exclusions—the modified "your work" and the "impaired property" exclusions—exclude coverage for all of the allegations in the underlying complaints. <u>See</u> Aplt. Op. Br., at 22. Mid-Continent contends "the only factual allegations made in the Underlying Complaint[s] regarding damages or losses refer to 'property damage' to the work of Red Point (which falls within the 'your work' exclusion) and loss of use of personal property (which falls within the second prong of the 'impaired property' exclusion)." Aplt. Reply Br., at 23. We disagree.

*Modified "Your Work" Exclusion*

Assuming, without deciding, that Mid-Continent's "your work" policy exclusion bars liability for all the factual allegations in the underlying action regarding property damage to Red Point's work product or to its subcontractors' work product (as Mid-Continent argues), Aplt. Op. Br., at 25–27, the complaints' allegations nonetheless triggered Mid-Continent's duty to defend.

Mid-Continent argues "the primary, if not sole, issue" in the complaints "[i]s Red Point's [or its subcontractors'] work." <u>See id.</u> at 28; Aplt. Reply Br., at 26. But the case law is demanding. Mid-Continent must either show Red Point's (and its subcontractors') work is, in fact, the sole issue in the complaints, and that coverage for Red Point's or its

20

subcontractors' work is <u>conclusively</u> <u>excluded</u> under Mid-Continent's policies.  <u>See</u>

<u>Headwaters</u>, 770 F.3d at 891 (applying Utah law).  Or, if damage to Red Point's or its

subcontractors' work product is not the sole allegation, Mid-Continent must demonstrate

its exclusions <u>conclusively</u> <u>exclude</u> coverage for Red Point's and its subcontractors' work

product <u>and</u> that the exclusions conclusively exclude coverage for the remaining

allegations.  <u>See</u> <u>id.</u>; <u>see</u> <u>also</u> <u>Cincinnati Ins. Co. v. AMSCO Windows</u>, 921 F. Supp. 2d

1226, 1236 (D. Utah 2013) ("To negate its duty to defend, an insurer must . . . do more

than point to a potential lack of insurance coverage regarding one of the claims at

issue . . .; instead, the insurer must demonstrate that none of the allegations of the

underlying claim is potentially covered . . . .").  Even assuming Endorsement CG 22 94

10 01 conclusively applies to exclude all potential coverage of the claims alleging

damage to Red Point's or its subcontractors' work product, the allegations in the

underlying complaints are not limited to damage occurring to Red Point's or its

subcontractors' work product.

The underlying complaints also allege damage to the Association's real and

personal property, damage to other property, damage to the work of others, and

consequential damages.  The complaints allege:

> <u>The water intrusion and construction defects</u> . . . <u>have caused</u> and will
> continue to cause injury and <u>damages</u>, including, but not limited to:
> continued severe water intrusion through the roofs, exterior walls, and
> through and around windows and deck doors into interior walls and unit
> spaces creating water staining, elevated moisture levels throughout the
> stucco walls, cracking and degradation of the building components
> including inside wall spaces, stone veneers, cracking and degradation of
> concrete flatwork and asphalt paving, <u>and loss of the use of Units and</u>
> <u>personal property within the Units</u>.

21

App., at 176 (emphasis added).

> The breach of such extra contractual duties is the direct and proximate cause of <u>damage</u> and <u>losses</u> to the Association, its <u>real and personal property and its interests</u>; potential damages to persons and property; <u>damages and losses to the Units and common areas and other property</u>; and <u>damage to the work of others</u>.

<u>Id.</u> at 166 (emphasis added).

> Wherefore, Plaintiff requests . . . [t]he Court enter its order . . . [f]or consequential damages in an amount to be proven at trial.

<u>Id.</u> at 201–02. These allegations fall outside the scope of Mid-Continent's "your work" policy exclusion.

<i>"Impaired Property" Exclusion</i>

Mid-Continent contends its "impaired property" exclusion conclusively precludes coverage for the allegations not barred by Mid-Continent's "your work" exclusion. <u>See</u> Aplt. Op. Br., at 32–33; App., at 84 (excluding from coverage "'[p]roperty damage' to 'impaired property' or property that has not been physically injured arising out of . . . [a] defect or deficiency, inadequacy or dangerous condition in 'your product', or 'your work'"). Mid-Continent argues the complaints do not allege "physical damage" to personal property, but only "loss of use" of personal property. Aplt. Op. Br., at 33. This, Mid-Continent claims, places the allegations "within the 'impaired property' exclusion [because] the claimed damage, 'loss of use', arose out of a defect or deficiency in Red Point's and its subcontractors' work (i.e. 'your work[']), as defined by the Mid-Continent policies." <u>Id.</u>

22

But the complaints do not only allege loss of use of personal property. The complaints also allege "damage" to personal property: "The breach of such extra contractual duties is the direct and proximate cause of damage and losses to the Association, its real and personal property and its interests." App., at 166. Mid-Continent overlooks the effect of the conjunction "and" between the words "damage" "and" "losses." The Association at least arguably alleged that personal property was physically damaged, and the "impaired property" exclusion does not exclude coverage for these claims.

The Association's complaints also allege damage to "other property" and to "the work of others." App., at 166. Mid-Continent argues, although the complaints "contain[ ] allegations of damage to the work 'of others,'" Maryland "does not point to [a] single allegation in the Underlying Complaint that actually alleges damage for which Red Point was being sued other than to work performed by Red Point or its subcontractors." See Aplt. Reply Br., at 28. However, the burden is not on Maryland to show the complaints' allegations are unquestionably covered by Mid-Continent's policies. Rather, Mid-Continent has the burden to show the allegations of "damage to other property" undoubtedly do not fall within its policies. These claims, too, are not unambiguously and conclusively excluded from coverage under Mid-Continent's policies.

The underlying complaints' allegations triggered Mid-Continent's duty to defend, as they were potentially covered under Mid-Continent's policies, and Mid-Continent did not establish the allegations were conclusively excluded from coverage.[8]

*3. Applicable Prejudgment Interest Rate – Maryland's Cross-Appeal*

"A district court's award of prejudgment interest is generally subject to an abuse of discretion standard of review on appeal." Driver Music Co., Inc. v. Commercial Union Ins. Cos., 94 F.3d 1428, 1433 (10th Cir. 1996). "However, any statutory interpretation or legal analysis underlying such an award is reviewed de novo." Id. "Thus, we review the district court's calculation of prejudgment interest de novo." Id.

Maryland contends the district court should have awarded prejudgment interest not at the U.S. Prime Rate of 3.25–3.50% during the applicable time, but at the 10% interest rate provided in Utah Code Ann. § 15-1-1(2). App., at 658, 663. We disagree and conclude Section 15-1-1(2) does not apply.

Section 15-1-1(2) provides:

Unless parties to a lawful contract specify a different rate of interest, the legal rate of interest for the loan or forbearance of any money, goods, or chose in action shall be 10% per annum.

The Utah Supreme Court is of the "view that the interest rate specified in section 15-1-1(2) does not necessarily even apply in all contract cases." Wilcox v. Anchor Wate,

---

[8] Nor did the district court abuse its discretion in denying Mid-Continent's motion for reconsideration of the court's grant of Maryland's motion for partial summary judgment. The district court appropriately applied the facts of this case, and Mid-Continent's policies and exclusions, to Utah law governing an insurer's duty to defend its insured.

24

Co., 164 P.3d 353, 364 (Utah 2007). Instead, the Utah Supreme Court has reiterated that section 15-1-1(2) "was meant to apply only to loans or forbearances in contract actions." Id. (emphasis added). Because recovery of prejudgment interest in this case is not for a loan or forbearance in a contract action, the rate specified in Section 15-1-1(2) is not the applicable rate of prejudgment interest. Instead, the U.S. Prime Rate applies.

## IV

We therefore AFFIRM the district court's: (i) grant of partial summary judgment in Maryland's favor, (ii) denial of Mid-Continent's motion to reconsider, and (iii) award of prejudgment interest at the U.S. Prime Rate. We also DENY Mid-Continent's motion to certify questions of state law to the Utah Supreme Court.

Entered for the Court


Mary Beck Briscoe
Circuit Judge

25

17-4032, *Maryland Casualty v. Mid-Continent Casualty*

**HARTZ**, Circuit Judge, dissenting:

It is unfortunate that we are not certifying to the Utah Supreme Court the statute-of-limitations issues in this case. Perhaps that court would agree with the view of the majority of this panel, but it would not surprise me if it took the path of other state courts that have adopted a different view.

Maryland's only proper claim against Mid-Continent is for equitable subrogation,[1] a claim that obviously sounds in equity, *see Sharon Steel Corp. v. Aetna Cas. & Sur. Co.*, 931 P.2d 127, 137–38, 140 (Utah 1997); *see also* 13 New Appleman on Insurance Law § 166.01[3] (Jeffrey E. Thomas ed. 2017) ("The various theories that permit one insurer to seek recovery of a portion of a loss from another insurer all emanate from principles of

---

[1] The panel opinion says that Maryland was also granted judgment on its contract claim against Mid-Continent. Of course, if that is correct, there is no need to address whether the claim for equitable contribution was timely because the contract claim undoubtedly was timely. But I do not read the record as granting judgment on the contract claim. In particular, the district court's order awarding prejudgment interest states, "Section 15-1-1(2) is inapplicable because Maryland's claims are equitable, not contractual." Aplt. App. 657. The language of the district court's judgment is as consistent with a ruling in favor of Mid-Continent on the contract claim as it is with an adverse ruling, and the award of prejudgment interest strongly suggests the former.

In any event, the contract claim has no merit. Because there was no contract between Maryland and Mid-Continent, a contract claim would have to be based on the assignment to Maryland of a contract claim that the insured, Red Point, had against Mid-Continent for not paying its share of defense costs. But Red Point could have no such claim, because Maryland paid all the defense costs and Red Point therefore suffered no injury. This appears to be the consensus view of state courts. *See, e.g., Coreslab Structures v. Scottsdale Ins. Co.*, 496 S.W.3d 884, 889 (Tex. App. 2016); *Concord Hosp. v. New Hampshire Med. Malpractice Joint Underwriting Ass'n*, 694 A.2d 996, 998 (N.H. 1997); *McDonald v. Nat'l Grange Mut. Ins. Co.*, 342 N.Y.S.2d 478, 479 (App. Div. 1973).

equity, given that the insurers that are each potentially liable to the policyholder do not have a contractual relationship with one another.").  That claim is therefore subject to Utah's general statute of limitations, which sets a four-year limitations period.  *See* Utah Code Ann. § 78B-2-307(3).

Maryland cannot take advantage of Utah's six-year limitations period for claims "founded upon an instrument in writing."  *Id.* § 78B-2-309(2).  Long ago the Utah Supreme Court followed California law stating that "a cause of action is founded upon an instrument of writing when the contract, obligation, or liability grows out of written instruments, not remotely or ultimately, but immediately."  *Bracklein v. Realty Ins. Co.*, 80 P.2d 471, 476 (Utah 1938) (emphasis, citations to California cases, and internal quotation marks omitted).  It elaborated, "The promise must arise directly from the writing itself and be included in its terms."  *Id.*  In particular, "a cause of action is not founded on a written instrument merely because it is indirectly connected with the instrument.  And the fact that a writing may be a link in the chain of evidence establishing the liability is not sufficient to say the cause of action is founded on such writing . . . ."  *Id.*  The point is made clearly in Corpus Juris Secundum:

> The statutory description of an action as "founded on an instrument in writing" or equivalent phrase refers to contracts, obligations, or liabilities growing, not remotely or ultimately, but immediately, out of written instruments.  *The written instrument relied on must contain all the essential elements of the contract, including the obligation to do the thing for the nonperformance of which the action is brought.*

54 C.J.S. Limitations of Actions § 105 (emphasis added, footnotes omitted); *accord Sec. Storage Co. v. Equitable Sec. Trust Co.*, 147 A.2d 507, 509–11 (Del. Super. Ct. 1958).

2

The application here of this construction of the statutory language is clear. There is simply no contract that imposes on Mid-Continent an obligation to reimburse a share of Maryland's cost of defense. Maryland's claim is based instead on "justice and fairness"—that is, "it sounds in equity and is not based on a written contract." *CIG Expl., Inc. v. State*, 24 P.3d 966, 969 (Utah 2001). Although one California appellate decision held that an insurer's claim for equitable contribution was a claim founded upon a written instrument, *see Liberty Mut. Ins. Co. v. Colonial Ins. Co.*, 87 Cal. Rptr. 348, 351 (Ct. App. 1970), that decision has been discredited by later opinions, which have pointed out that its analysis was based on a misreading of a California Supreme Court opinion. *See Am. States Ins. Co. v. Nat'l Fire Ins. Co. of Hartford*, 135 Cal. Rptr. 3d 177, 181–82 (Ct. App. 2011); *Century Indem. Co. v. Superior Court*, 58 Cal. Rptr. 2d 69, 74–75 (Ct. App. 1996).

I would reverse the district court because Maryland's claim is untimely.